Belknap Probate Court
No. 7884

### *In re* ESTATE OF LLOYD D. LUND

March 31, 1978

*Arthur H. Nighswander,* executor, of Laconia, by brief and orally pro se.

*Normandin, Cheney & O'Neil,* of Laconia (*David O. Huot* orally), for Barbara Bennett, Ernestine L. Green, and Richard O. Landis.

BOIS, J. This is an appeal from a decree of the Probate Court (*Tilton,* J.) granting a petition for partial distribution in accordance with the will of Lloyd D. Lund, late of Meredith. We affirm and direct the court to proceed expeditiously in the orderly administration of the estate.

Briefly the relevant facts are as follows: On December 1, 1960, Lloyd D. Lund executed a will leaving his entire estate to his wife, Amelia Katherina Lund. The will provided that if Amelia predeceased or died simultaneously with the testator, Arthur H. Nighswander was to be named executor and an alternative scheme of distribution was to take effect. On February 19, 1975, Amelia died in Florida. Three days later, while still in Florida, Lloyd handwrote and signed the following instrument, which listed the names of three persons as witnesses.

February 22, 1975

Due to the fact that I have lost my loving wife, Amelia Katerina, I would like to protect my estate by making this statement:

In case of my death, I would want my sister, my neices [sic] and nephews and Katherina's 5 sisters and 1 brother to share equally.

s/Lloyd D. Lund<br>1435 Wisconsin Avenue<br>Palm Harbor, Fla.

Witness
s/Stephen T. Frazier, Jr.
s/Jeanette H. Frazier
s/Gladys S. Ganung

3 copies have been made

A relative of Mr. Lund hand delivered the document to Attorney Nighswander in New Hampshire. On February 27, 1975, Attorney Nighswander wrote his client questioning the meaning, intent, effect, and validity of the instrument, and suggested that, upon receipt of instructions, a proper codicil could be prepared and executed. On May 24, 1975, Lund, who had returned to New Hampshire earlier that month, died without having contacted his attorney.

On May 26, 1975, the will was proved and allowed in common form. RSA 552:6. Nighswander, who was appointed executor, filed

the February 22 "statement" with the court on June 6, 1975. The reserved case and record herein are incomplete and confusing as to when certain notices were sent to legatees, heirs at law, and the brother and sisters of Amelia. The record discloses, however, that the appellant Bennett was noticed under date of July 1, 1975, and appellant Green, whose true address was unknown, on December 31, 1975. Through the notice, the executor advised that the "statement (copy enclosed)" was filed with the court and that he was "not sure what its legal effect may be." The notice contained a suggestion that "[y]ou may of course, consult your own attorney if you wish." On March 18, 1976, a letter was sent to all legatees, including grandnieces and grandnephews referred to in the will. In this letter Nighswander advised that he had interviewed two of the statement's attesting witnesses, and concluded that "unless some settlement is reached, I shall be obliged to present the paper to the Probate Court as a Codicil to his [Lund's] Will as it was apparently legally executed."

On April 5, 1976, an attorney filed an appearance for one Carl L. Lund, Jr., a nephew and a legatee under the original will. On May 14, 1976, another attorney filed an appearance for Barbara Bennett, Ernestine L. Green, and Richard O. Landis, the three appellants herein. On December 15, 1976, the probate court appointed a guardian ad litem to represent "minors, [and] those persons who are unknown or live out of state, not otherwise represented by counsel."

The parties were unable to reach an agreement *inter se* about the legal effect of the statement. Appellants did not take affirmative action in the probate court. The executor decided against presenting the statement for probate, and on October 23, 1976, petitioned for partial distribution of the estate. At a hearing held on January 19, 1977, the attorneys for the appellants and Mr. Lund, Jr., contended that Nighswander either was under a duty, as executor, to probate the statement or assumed such a duty by making representations that he would attempt to prove the instrument. The court-appointed guardian was not present at the hearing but submitted a report recommending that a determination be made about the legal effect, if any, of the Florida statement. The hearing ended and the court allowed the parties thirty days within which to file legal memoranda.

By decree dated April 8, 1977, the probate court granted the petition for partial distribution and stated:

There has been no sworn evidence introduced nor has there been any attempt to prove the instrument in question as either a Will or Codicil. There has been no attempt to take depositions of the witnesses to this instrument in Florida.

. . . .

In the present situation, it is impossible to determine Mr. Lund's intention. It is, therefore, decreed that the instrument of February 22, 1975 should not be admitted to probate, either as a Will or Codicil. Consequently, the executor's petition for partial distribution is hereby granted.

Timely exceptions were noted and all questions raised by the petition and decree were reserved and transferred.

The appellants press two arguments. First, they argue that the probate court erred in passing on the validity of the Florida instrument, because it was not properly before the court. For the reasons that follow, we hold that even if it was error for the court to consider the instrument, such error was harmless. We also reject the second contention that, because the statement had not yet been submitted to probate, the grant of the petition for partial distribution was premature.

 The original probate of the December 1960 will was not contested; proof of the will in common form was therefore proper. *In Re Pafelis Estate,* 108 N.H. 265, 233 A.2d 825 (1967); *Knight v. Hollings,* 73 N.H. 495, 63 A. 38 (1906); RSA 552:6. Probate in common form establishes not only that the will was validly executed by a person who had testamentary capacity and intent, but also that the will was the testator's last will and testament. *Glover v. Baker,* 76 N.H. 393, 83 A. 916 (1912), 44A 393 (1895). Thus the probate court correctly decreed, on May 26, 1975, that the Lund will was "proved, approved and allowed as the last will of said testator."

 At that point in the proceedings, several avenues of action were available to any parties interested in the estate. First, any interested party could have taken a timely appeal from the common form probate in accordance with RSA 567:2, but no one did. Accordingly, any right to contest the proof of the will by appeal to the superior court, as of right, has been lost. *Sullivan v. Bank,* 99 N.H. 262, 109 A.2d 572 (1954).

■ Second, any appellant wishing to contest the probate and allowance of the will had six months thereafter, under RSA 552:7 (repealed), to demand reexamination of the will and probate in solemn form. No one filed such a request; the time has therefore passed for contesting the will. *Knight v. Hollings,* 73 N.H. 495, 63 A. 38 (1906).

■■ Third, the probate court undoubtedly had the power, in its discretion, to set aside the decree, provided sufficient cause was shown. However, the power is equitable in nature and should not be exercised upon the mere asking. *Knight v. Hollings supra.* The record herein does not reveal that any petition seeking such modification or vacation of the probate decree was ever filed.

■ Finally, no party had formally moved that the statement be proved or allowed in probate, either as a will or a codicil.

It thus seems that the probate court erred when in its April 8, 1977, order it ruled that the statement was legally inoperative. We fail to see, however, how such error prejudiced the rights of the parties. As we have indicated, the parties took no legal action to reverse the proof of the will in common form and thus had no right to have the court modify in whole or in part its decree in light of the statement. That the court passed on the validity of the statement anyway, and ruled that it would disregard it because it was not proved, is of no moment and at most harmless error.

■ The argument may be advanced that the parties, in substance if not in form, sought modification or vacation of the decree at the January 19, 1977, hearing. At that time it was requested that the court not order partial distribution until the parties shall have had an opportunity to submit legal memoranda on whether the statement should affect distribution. Even if this request is deemed to be a petition for modification of the decree of probate, we hold that the court acted within its discretion in denying the request.

■ For a court to set aside its approval of a will there must exist "some substantial ground, such as fraud, accident, or mistake, which renders it against conscience to execute the decree they [the parties] attack, and of which they were prevented from availing themselves by fraud, accident, or mistake, *unmixed with any* fraud or *negligence* on their part." (Emphasis added.) *Knight v. Hollings,* 73 N.H. at 502, 63 A. at 42. Here, where the parties

knew, or should have known, of the statement as early as June 1975, yet did not seek to set aside or modify the probate of the will or even offer the statement itself for probate until 1977, the court acted within its discretion in denying the petition to reopen the order of probate. The *Knight* court, in the context of omission of notice, held that "[it] does not appear to be unreasonable when it is considered that ordinarily the heirs learn of the decease of the person very soon after it occurs, and that their interests naturally and strongly urge them to promptly ascertain the nature, extent, situation and disposition of his estate. They are put upon inquiry by the death of the party, and one reasonably chargeable with notice of all facts concerning their rights." In the instant case, all appealing parties had actual notice by the end of 1975; two, shortly after July 1, 1975; and the third shortly after December 23, 1975. It was incumbent upon them to take immediate action to protect their interest; not to do so was neglect chargeable against them.

Neither are we swayed by the appealing parties' attempt to excuse their negligent nonaction by claiming that the executor failed in an alleged actual or assumed duty to present the statement for probate.

No direct attack having been successfully made on the will, it cannot now be collaterally attacked. *See Langley v. Langley*, 84 N.H. 515, 153 A. 9 (1931); *Glover v. Baker*, 76 N.H. 393, 83 A. 916 (1912).

*Exceptions overruled; remanded.*

LAMPRON, J., did not sit; the others concurred.