Filed 8/5/25  Schaller v. Sahagun CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN C. SCHALLER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SARA LETICIA SAHAGUN,<br><br>        Defendant and Appellant. | A169219<br><br>(Contra Costa County<br>Super. Ct. No. C22-01481) |

Defendant Sara Leticia Sahagun appeals from a judgment in favor of plaintiff John C. Schaller, by which the trial court found her liable for fraudulent conveyance as the transferee of property from her husband, Christopher Turk.  Sahagun contends the court erred by failing to give res judicata or collateral estoppel effect to an order in Turk's bankruptcy case.  We affirm.

## I.  BACKGROUND

In February 2019, Schaller, a licensed attorney, sued Turk for breach of contract, alleging Turk failed to pay him for legal services he provided Turk.

Approximately nine months later, Turk transferred 75 percent of his interest in real property located in Bay Point (the Property) to Sahagun.  The interspousal transfer deed stated that Turk was placing title in the name of Sahagun as her separate property.  Turk retained a 25 percent interest in the Property.

1

In April 2022, judgment was entered in favor of Schaller and against Turk in the breach of contract action for over $200,000. Schaller recorded an abstract of judgment.

The following month, Turk filed a Chapter 7 bankruptcy petition. In connection with his petition, he filed a "Schedule A/B" form, in which he listed his assets. He claimed that the value of the Property was $750,000, and that the value of his interest in the Property was $187,500, which is consistent with a 25 percent interest.

In July 2022, Schaller filed the current action against Sahagun for fraudulent conveyance based on Turk's transfer of 75 percent of his interest in the Property to Sahagun. The operative complaint stated that Schaller would elect his remedy prior to entry of judgment and that he sought no relief against Turk.

In August 2022, Turk filed a motion in the bankruptcy action to "avoid the Judicial Lien placed by Schaller" on the Property. He brought the motion pursuant to title 11 of the United States Code[1] section 522, which allows a debtor to avoid a judicial lien that a creditor has in property if the lien impairs an exemption to which the debtor would have been entitled absent the lien. (§ 522, subd. (f).)

In his motion, Turk claimed that the value of the Property was $750,000, that the total equity in the property was $450,000, that he filed a "Claim of Exemption" for the Property to which no one objected, and that the maximum amount allowed for his claimed homestead exemption was $600,000. Thus, he argued, the Property was "completely protected by" his

---

[1] Further undesignated section references are to title 11 of the United States Code.

2

exemption, regardless of whether he owned a 25 percent interest or a 100 percent interest in the Property.

In November 2022, the bankruptcy court granted the motion and ordered that the abstract of judgment recorded by Schaller for his breach of contract action was "hereby avoided, expunged and of no further force or effect."

In June 2023, after the fraudulent conveyance action was tried, the trial court asked the parties to submit supplemental briefing on four issues, including the legal effect of the order granting Turk's motion to avoid lien in the bankruptcy proceeding and whether Schaller was required to challenge Turk's actions in the bankruptcy proceeding.

In her supplemental brief, Sahagun argued that the order granting Turk's motion to avoid a judicial lien on the Property was res judicata of any issues that could have been brought in the bankruptcy action, including whether the Property was "completely protected by" Turk's homestead exemption. She further claimed that Schaller was estopped from relitigating these issues because he failed to oppose the motion to avoid lien.

Schaller argued that the order granting Turk's motion to avoid lien had "nothing to do with Mr. Schaller's rights against Ms. Sahagun." He further contended that he was not required to assert his fraudulent conveyance claim in the bankruptcy action because he was entitled under section 548 to bring the claim in state court once the bankruptcy case closed.

After the parties submitted their supplemental briefs, the trial court found in favor of Schaller and concluded that the bankruptcy proceedings did not alter the outcome of the case. Schaller thereafter elected to receive monetary damages from Sahagun.

3

In October 2023, the trial court entered judgment in favor of Schaller and against Sahagun.

## II. DISCUSSION

### A. *Sahagun's Burden as the Appellant*

Sahagun's arguments on appeal are difficult to discern, as much of her briefing is devoid of reasoned argument and relevant legal authority.

"On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Since the appealing party must affirmatively show error, that party must "provide citations to the appellate record directing the court to the evidence supporting each factual assertion." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*).) Also, " '[a]ppellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956, disagreed with on other grounds in *Oak Springs Villas Homeowners Assn. v. Advanced Truss Systems, Inc.* (2012) 206 Cal.App.4th 1304, 1308.)

In other words, the appellant "has the burden of persuasion; '[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.) "The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian, supra*, 67 Cal.App.5th at p. 684.)

4

Sahagun's briefing is rife with conclusory assertions unsupported by meaningful legal analysis. For example, after setting forth the general rules for evaluating a section 522 motion to avoid lien, she concludes that "any and all issues that could have been brought up in the Bankruptcy proceedings, whether or not they were actually brought up by the creditor is res judicata." (Boldface omitted.) She then lists the issues that were decided in connection with Turk's motion to avoid lien but does not explain how such issues were res judicata of Schaller's fraudulent conveyance claim, nor does she cite any legal authority in support of her argument. This is patently insufficient to carry her burden on appeal to affirmatively demonstrate error by the trial court.

To the extent Sahagun cites legal authority for asserted errors of law, she often does not discuss that authority in a reasoned way. We will not develop Sahagun's arguments for her or guess at what legal arguments she might have intended to make. (*Meridian, supra*, 67 Cal.App.5th at p. 684.)

That said, we will briefly discuss further the issues of res judicata and collateral estoppel since Sahagun's overarching position is that the bankruptcy court's ruling on Turk's motion to avoid lien precluded Schaller from litigating his fraudulent conveyance action.[2] We reject her position for the reasons explained below.

---

[2] Citing *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 758, Schaller argues that Sahagun waived the defenses of res judicata and collateral estoppel by failing to plead them in her general denial. Sahagun responds that she asserted res judicata and collateral estoppel as defenses in her supplemental issue conference statement, and thus Schaller cannot raise his objection for the first time on appeal. We need not decide this dispute because we affirm the judgment for other reasons, as discussed below.

5

### B. General Res Judicata Principles and Standard of Review

" 'Res judicata' describes the preclusive effect of a final judgment on the merits.  Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  We must apply federal law in determining the preclusive effect of a federal judgment.  (*Martin v. Martin* (1970) 2 Cal.3d 752, 761.)

Under federal law, the elements required to establish res judicata are: " '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties.' " (*Headwaters Inc. v. U.S. Forest Service* (9th Cir. 2005) 399 F.3d 1047, 1052.)

Relitigation of an issue may be foreclosed under collateral estoppel when "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." (*IRS v. Palmer* (9th Cir. 2000) 207 F.3d 566, 568.)  "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." (*Robi v. Five Platters, Inc.* (9th Cir. 1988) 838 F.2d 318, 322.)

We review the findings supporting the state court judgment for substantial evidence.  (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)  "However, when the decisive facts are undisputed, the reviewing court is confronted with a question of law and is not bound by the findings of the trial court." (*Ibid.*)

### C. No Prior Adjudication of Claim

Sahagun argues that Schaller's fraudulent conveyance action was barred by the doctrine of res judicata. However, she does not address the elements of claim preclusion, which forfeits any such claim. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

In any event, we find the first element, identity of claims, dispositive. Under that element, the mere circumstance that two suits share some common facts is insufficient to warrant the court's finding of an identity of claims. (*N.L.R.B. v. United Technologies, Inc.* (2d Cir. 1983) 706 F.2d 1254, 1259–1260.) Rather, courts must consider a number of factors, including "whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action." (*Harris v. Jacobs* (9th Cir. 1980) 621 F.2d 341, 343.)

"The central criterion" is " 'whether the two suits arise out of the same transactional nucleus of facts.' " (*Frank v. United Airlines, Inc.* (9th Cir. 2000) 216 F.3d 845, 851.) "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." (*International Union of Operating Engineers-Employers Constr. Indus. Pension, etc. v. Karr* (9th Cir. 1993) 994 F.2d 1426, 1429.) This applies to not only claims that were actually litigated, but also all claims that could have been asserted in the prior action. (*Id.* at p. 1430.)

Here, the facts involved in Turk's motion to avoid lien and Schaller's fraudulent conveyance claim are different. The nucleus of facts to be considered on the fraudulent conveyance claim were Turk's conveyance of a 75 percent interest in the Property to Sahagun, his intent in doing so, and whether Sahagun took the Property in good faith or "for a reasonably

7

equivalent value given the debtor." (Cal. Civ. Code, § 3439.08, subds. (a), (b)(1)(A).)

In contrast, the questions raised by Turk's motion were whether he was entitled to an exemption for his interest in the Property, whether the judicial lien from the breach of contract action was impairing his claimed exemption, and the extent of the impairment. (§ 522, subd. (f); *In re Morgan* (Bankr. 9th Cir. 1993) 149 B.R. 147, 151.) For purposes of the motion to avoid lien, the property at issue was that listed in Turk's bankruptcy schedules (*ibid.*), which, according to the record, did not include the 75 percent interest in the Property that he had conveyed to Sahagun. Thus, the facts considered on Turk's motion were different than what would be presented at trial as to Schaller's fraudulent conveyance claim.

Even if there was some factual overlap between the two proceedings, we do not see how Turk's right to avoid the judicial lien from the breach of contract action would be destroyed or impaired by the prosecution of Schaller's fraudulent conveyance claim, which sought relief against only Sahagun. (*Harris v. Jacobs*, *supra*, 621 F.2d at p. 343.) Turk's rights under section 522 pertain to his interest in the Property (§ 522, subd. (f)), while cursory research suggests Sahagun would be separately liable for her role in the fraudulent conveyance. (See Cal. Civ. Code, § 3439.08, subds. (a), (b)(1)(A) [transferee liability]; *In re Vulaj* (Bankr. S.D.Cal. 2023) 651 B.R. 310, 315 [creditor " 'obtained' a different 'debt' from [transferee] than [the debtor's] liability to" the creditor for fraudulent conveyance].) Because Sahagun has not demonstrated otherwise, we presume Turk's rights in his bankruptcy case would not be impaired by Schaller's fraudulent conveyance action.

Further, claim preclusion "only precludes the assertion of issues that 'could or should have been raised during the pendency of the case.' " (*In re Kelley* (Bankr. 9th Cir. 1996) 199 B.R. 698, 703.)  Here, Schaller could not have asserted his fraudulent conveyance claim in Turk's bankruptcy case because the bankruptcy trustee had the exclusive authority to raise such claims during the bankruptcy case and did not do so.  (§§ 544, subd. (b), 548, subd. (a)(1); *Brenelli Amedo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1842; *In re Mark One Corporation* (Bankr. E.D.Cal. 2020) 619 B.R. 423, 439.)  Schaller would have had to wait to litigate his fraudulent conveyance claim until Turk's bankruptcy case closed.  "Though the trustee has the exclusive right to bring an action for fraudulent conveyance during the pendency of the bankruptcy proceedings, the Bankruptcy Code does not extinguish the right of [a creditor] to bring a state law action for fraudulent conveyance after the debtor receives a discharge in bankruptcy." (*Hatchett v. United States* (6th Cir. 2003) 330 F.3d 875, 886.)  Sahagun appears to argue that this authority is inapplicable where, as here, the debtor filed a motion to avoid lien, but the cases cited by the parties do not indicate that there is such a carveout to the trustee's exclusive authority to bring a fraudulent conveyance claim in a bankruptcy case.

Sahagun's remaining argument regarding the res judicata effect of the bankruptcy order is undeveloped.  She cites case law establishing that a bankruptcy order setting aside exemptions is res judicata as to the exemption of the property against creditors without liens.  From this authority, she concludes an order that "affirms that exemption must also be res judicata," but she does not explain how such an order would be res judicata of Schaller's fraudulent conveyance claim.

9

We therefore conclude that Sahagun has not met her burden to affirmatively demonstrate that the bankruptcy proceedings were res judicata of Schaller's fraudulent conveyance claim. (*Meridian, supra*, 67 Cal.App.5th at p. 684.)

### D. No Prior Adjudication of Issue

Sahagun argues that Schaller was estopped from arguing in his fraudulent conveyance action that Turk had a 100 percent ownership interest in the Property due to his alleged fraud, because the issues of the percentage of Turk's ownership interest in the Property, the value of the Property, and the amount of Turk's homestead exemption were litigated in the bankruptcy action. Again, she does not address the elements of issue preclusion, and her claim of error fails on the merits anyway.

Issue preclusion requires that the issue determined in the prior action be identical to the issue presented in the current action. (*In re Wright* (Bankr. C.D.Cal. 2006) 355 B.R. 192, 204.) Additionally, the issue must have been " 'actually litigated,' " meaning the issue was raised and each party had an opportunity to argue its position in some form. (See *Purdy v. Zeldes* (2d Cir. 2003) 337 F.3d 253, 258, disagreed with on other grounds in *Ruppert v. Principal Life Ins. Co.* (8th Cir. 2013) 705 F.3d 839, 843; *In re Reg'l Bldg. Sys.* (4th Cir. 2001) 254 F.3d 528, 533.)

Here, the issues actually decided in the bankruptcy litigation were not identical to the issues in the fraudulent conveyance litigation. First, as previously discussed, the question presented by Turk's motion to avoid lien was whether he would be entitled to an exemption for a 25 percent interest in the Property. There is no indication in the record that any party in the bankruptcy case sought to avoid Turk's conveyance of the other 75 interest in the Property. (See Fed. Rules Bankr. Proc., rule 7001, subd. (a) [requiring an

10

adversary proceeding "to recover money or property"].)  Thus, we cannot conclude that the issue of whether Turk owned 100 percent of the Property was actually litigated in the bankruptcy action.

Further, Sahagun does not meaningfully address the argument Schaller raised in the trial court and again in his respondent's brief that Turk's bankruptcy discharge and the avoidance of the lien impairing his exemption for the Property were irrelevant to Sahagun's liability for her role in the fraud.  (See *In re Vulaj*, *supra*, 651 B.R. at p. 315.)  In his fraudulent conveyance action, Schaller did not seek to unwind the transfer of Turk's interest in the Property to Sahagun; he elected instead to receive money damages from Sahagun.[3]  (See Civ. Code, § 3439.08, subd. (b)(1) ["creditor may recover judgment for the value of the asset transferred"].)  Thus, it appears that Schaller's fraudulent conveyance action did not involve any of the issues litigated in connection with Turk's motion to avoid lien.

Accordingly, Sahagun has not demonstrated that the trial court erred by failing to give collateral estoppel effect to the bankruptcy court's ruling on Turk's motion to avoid lien.

### III.   DISPOSITION

The judgment is affirmed.

---

[3] For these reasons, we do not address Sahagun's arguments that the Property was community property and therefore outside the reach of any creditors.  These arguments are forfeited anyway, as they are unsupported by record citations.

11

_____

Langhorne Wilson, J.


WE CONCUR:



_____

Banke, Acting P. J.



_____

Smiley, J.



*Schaller v. Sahagun*  A169219